Our third case of the day is Liscano v. Entzel. Mr. Smith. Thank you, Judge Easterbrook, and may it please the court, counsel. Mr. Liscano's petition sits squarely within this court's precedent governing when a petitioner is entitled to release under Section 2241, and that is a line of precedent that very much includes, of course, this court's recent decisions in Chazin v. Marski and Worman v. Entzel. Now, there is no real dispute on this appeal that at least two of the three components or steps in what's come to be known as the petition are satisfied. The government, I think it's fair to say, concedes that Mr. Liscano has suffered a miscarriage of justice grave enough to warrant habeas relief. There's no dispute that Mr. Liscano is serving a mandatory statutory life sentence that he should not be. And since the government concedes that point, I won't dwell on it. And, of course, I recognize that collateral review is not an exercise in perfectionism and, if it were, just that Mr. Liscano were... Can I interrupt and ask you a question that I have about your argument? Let's bracket, you know, the government is essentially asking us to overrule Chazin. Let's bracket that. And let me ask you why, even on Chazin's own terms, your client is entitled to relief. Because a distinction between this case and Chazin is that Chazin, the circuit of conviction was the 8th Circuit. And in Chazin, I mean, Mathis was a case from the 8th Circuit. You know, the 8th Circuit was very clearly on the wrong side of Mathis. Our circuit was less clear. In fact, in the third petition in Mathis, we were not even identified as being part of the split. So I'm not really sure. I mean, it's certainly true that there was some dicta in our decisions that's on the wrong side of Mathis. But we hadn't clearly held that the modified characterical approach could apply, you know, when it was mean, when it was an indivisible statute. We didn't clearly take a side in that. I don't see how your client was foreclosed from making that argument. He had his clear procedural shot the first time. Is that Judge Barrett? Hello? Go ahead. Sorry. Can you hear me okay, Judge? Yes, I can hear you. Okay. I would push back on that, Judge Barrett. If you look at the language we've cited in the opinions going from Sperberg through Woods through Ellis, Fife, and Zondor, Zondor having been decided after death camps, the law in this circuit was clear that if you have one crime, if the statute describes one crime with multiple modes of commission, then it's divisible. And respectfully, Judge, I'd push back on the idea that that was simply dicta. There are certainly some cases in the line of cases we cite where that principle doesn't necessarily get put into operation just because of the way the case breaks out. But there are many cases where it did. Fife, for example, was a case involving the armed violence statute where the court treated that statute as divisible. And it was a statutory scheme, I think, in some ways, very analogous to what you're dealing with with the Illinois narcotics statute here. Because you just have if you commit some felony with a gun, then you're guilty under the statute. And there are obviously a variety of potential predicate statutes for that. Equally, in Sperberg and Ellis, you have a situation where the court is applying the modified categorical approach based on a conclusion that the statute at issue is divisible. And- Sonnenberg, Sonnenberg is going the other way. And it just seems to me, I don't deny, I think you're right that there was cases that supports your argument that we would not have viewed an argument, we would not have viewed that argument favorably. But in the context of a 2241 petition trying to take advantage of the savings clause, I mean, I think we're talking about rarely foreclosed, not just it seems like all the indications in the key leads are not hospitable to that argument. Judge, I understand that point. I, again, I just disagree with that. And one way, I think, to look at this is to articulate the Mr. Loscano's massive claim, which is precisely that the Illinois statute at issue here is not divisible because it, the various scheduled narcotics by statute are not elements. They're alternative ways of violating the statute. There are alternative modes of commission to use a phrase that was repeated often in this circuit's precedent. And so the modified categorical approach does not apply. Someone making that argument in this pre, in this circuit pre-Mathis was foreclosed and I, and, it would be foreclosed under. Counsel. Yes. Judge Easterbrook. Yes. I wonder why it matters whether a particular argument was foreclosed in the seventh circuit, the Supreme court held in the Boosley case, that it is essential to make an argument, whether or not it's foreclosed by certain precedent, unless the justices said the argument was so novel, the council couldn't have imagined it. Okay. Why isn't that the standard we're supposed to be following about when an argument needs to be presented? Right. Judge Easterbrook. I know the, I'm familiar with the passage in Boosley and I know it's been raised in various concurring or dissenting opinions from, from the approach that has been taken by this court since Davenport. I do think that one answer to your question is that it matters because that's the law of the circuit at this point as to, you know, as to the saving cost. Counsel, I'm asking why we aren't bound by a decision of the Supreme court and the answer that one or two panels of this circuit haven't followed the Supreme court doesn't seem to me very persuasive. Is there some reason why Davenport is not controlling in this respect? Well, judge, I think, um, Davenport and the cases that have followed it took into account, uh, the language that I believe your honor is referencing in Boosley. I will ask one last time, do you have a response, you personally, a legal response to Boosley? Judge, uh, I would say a couple of things about that. Um, I do think that the language in Boosley, the statement, uh, about what, uh, the significance of futility is and which has been taken to, if I understand your question, uh, bear on what it means for 2255 to be ineffective is, um, it's, I don't think it was entirely clear from the record in Boosley, uh, what the level of futility we were talking about there, but, uh, I will say, uh, I think more than a couple of decisions in this circuit have not withstanding, uh, Boosley, uh, articulated the foreclosed by binding precedent. And I think that's in fact, the more rigorous, rigorous, most rigorous formulation of this court clause, uh, test. But I do think if you look at what we're dealing with in this case, uh, and, and I would, you know, uh, uh, borrow from the observation that the solicitor general made in pursuit, uh, you've got a situation where Mr. Lascano, uh, was sentenced to life when he was not within the class of people for whom Congress authorized or envision that sentence. And so as the government said in pursuit, um, the application of a mandatory statutory life sentence here does implicate due process and separation of powers concerns. And I think you're getting very much to the core of what the purpose of habeas is and the purpose of the savings clause. And, you know, the Webster case, um, which, which was unique in many respects, given the nature of the claim, uh, teaches that the savings clause test doesn't need to be but, um, it, um, uh, uh, here, I think you're getting very much to that core. Um, am I still on the line? Yes, I can still hear you. Okay. I'm sorry. I had heard a, I had heard a beep and, and, um, uh, and, and things had gone silent. So I just wanted to make sure. So, so what I would say about that counsel, you are into your rebuttal time. Ah, thank you. Judge Easterbrook. I had five minutes. Yes. I appreciate that. Um, I, I will, um, briefly wrap up before reserving my rebuttal time by urging the court, uh, really to take a look at, um, the holdings of the cases, uh, cited at page four to five of our, uh, of our reply brief and footnote one. Mathis really changed something in this court's jurisprudence. Um, and, and I do think, uh, the claim, the Mathis, or as the government describes it, elements only claim was squarely foreclosed by this court's jurisprudence. I agree with Judge Barrett that the government is effectively asking the court to overrule, uh, Chazin and I is, uh, not standing out there alone. And it is the settled law of the circuit and I'll reserve the rest of my time for rebuttal. Thank you. Yep. Certainly counsel Ms. Boyle. Thank you, your honor. May it please the court counsel. My name is Catherine Boyle on behalf of the United States. Um, the heart of this appeal is whether the motion remedy section 2255 was inadequate or ineffective for Mr. Lascano to challenge his mandatory life sentence. It was not. I'd like to first turn to the issue raised by Judge Barrett, um, which is whether the claim, and Judge Easterbrook, which is whether the claim was squarely foreclosed. The Mathis style claim that Mr. Lascano raised in his Davenport petition was not foreclosed by binding precedent in the circuit at the time of his directive appeal and first collateral attack. Mr. Lascano has cited to this court's decision in Sturberg and Riggs to support his claim that his Mathis style claim was foreclosed, but we don't believe those represent, um, a square foreclosure, which is what is required. While it's true that the court's discussion in Sturberg didn't draw a distinction between the elements and means for divisibility, it's not clear that the court, that the defendant had asked the court to draw that distinction. Um, in a case there where the defendant took the position that the court should never apply modified categorical approach, we can't say that Sturberg's statement that the modified categorical approach may apply when a law specifies multiple ways to commit an offense constitutes a considered rejection of an element-only approach to divisibility. We similarly believe that the, um, decisions in Woods, which Mr. Lascano also cites, also shows that there's real ambiguity here as to whether the, um, whether the element-only approach was appropriate. Ms. Boyle, can I shift gears and ask you a question about what effect Chazen is having in the district courts? Um, have, has there been a flood of petitions relying on Mathis post-Chazen? We have seen, um, we have seen increased petitions relying, uh, relying on us to overrule Chazen. Well, Jana, we think as, as was correctly noted in the Chazen concurrence, um, the opinion and this entire area of law, really, which this court has repeatedly described as staggeringly complex, could really, um, use additional clarity. And we think that the decision in Chazen is further, um, further made, requires further clarity, particularly in this court's decision in Hansen, which we understand applies to 2255, but did state that Mathis was new. And then when you also look at this court's decision in Worman, uh, where we looked at, where part of the consideration was whether Dean was new, and the court decided that Dean was new, um, looking at it under a standard of whether it was dictated by a prior precedent, and did not proceed with its analysis until it had made that decision. So, we think that in light of these cases that the Hansen case, the Worman case, and then actually what was pointed out in the Chazen concurrence is some of the, some of the issues that really need to be clarified in the area of 2241 law. Um, since this court's decision in Davenport, the, um, the case law on these issues has really drifted far from that initial decision. And we believe that this case presents an important opportunity for the court to take a step back and really define, uh, some of the parameters of 2241. Thank you. Thank you, Your Honor. While we're speaking about Chazen, I also want to note, um, on the foreclosure issue, as opposed to the newness issue, uh, we believe that Chazen did not establish that it would have been futile for Mr. Lascano to raise a Mathis-style challenge to his prior Illinois convictions because the law was, uh, scarily against him. We recognize that in Chazen, this court held that Mathis could provide the basis for Mr. Chazen's Davenport petition, uh, based on the theory that Mathis constituted an intervening case of statutory interpretation that ingested much needed clarity and direction into the law under the Armed Career Criminal Act. And the court said in Chazen's case that opened the door to a previously foreclosed claim. Chazen, we acknowledge, stated that Mathis is new as a functional and practical matter in that context and did indicate that some Mathis claims could satisfy the requirements of the savings clause. But we still think when you look at the Chazen decision closely, it doesn't establish that it would have been futile for Mr. Lascano to have previously raised a Mathis-style challenge to his prior Illinois convictions because the law was scarily against him. Um, as we've been discussing, we think the question of futility can't be answered without evaluating the state of the law and the circuit of conviction at the time and how it's changed. In Chazen, this court identified two circumstances that led it to conclude that before Mathis, it would have been futile for Mr. Chazen to argue that his Minnesota first-degree convictions did not qualify as Mathis. The Eighth Circuit had held directly that Minnesota Berkeley was a violent felony. And then the second circumstance is the Eighth Circuit had applied the modified categorical approach regardless of whether a statute listed distinct elements or alternative names. And Judge Barrett, as you noted, that was not the case in this circuit. There was much more ambiguity. The circuit's decisions were not the basis for the review in Mathis. So we, in our view, Chazen therefore establishes that only that the law of the circuit of conviction should be deemed to foreclose a Mathis-style challenge to an armed career criminal act predicate if the circuit of conviction had squarely held that the offense in question was a valid predicate and also when the circuit of conviction had adopted an anti-Mathis approach to divisibility. And in this case, Mr. Lascano does not meet either of those requirements. We additionally believe that Mr. Lascano's claim was not previously foreclosed for two additional reasons. It was an open question at the time of his appeal in Section 2255 motion whether an offense in violation of the relevant Illinois statute of conviction, Site 7402C, constituted a felony drug offense within the meaning of Section 80244. And further, it was an open question as to whether Section 80244 even required courts to apply a categorical approach, which would have been a condition precedent to any Mathis-style claim. And this court did not resolve that latter question until 2018 in its decision in Elder. I'd like to also discuss briefly the newness requirement as discussed in Chazen. One moment, Your Honor. I apologize. Although we recognize that this court's recent decision in Chazen, which treated the new rule question and the foreclosed by binding precedent question as synonymous, we still think that it's very important that the Chazen concurrence recognize that this court has yet to examine whether newness in the Davenport context bears a relationship to the newness requirements in 2255H2 and F3. Although those two portions of the 2255 statute are phrased somewhat differently, the court should apply the same newness standard to both provisions, which is whether the Supreme Court decision broke new ground or was not dictated by precedent. And we believe that this court should clarify that that same standard should apply here. This court's decision in Davenport was meant to fix a structural problem a couple of years after 2255H was enacted with the EDSA amendments. And the problem was that the statute did not permit successive motions based on Supreme Court decisions of statutory interpretation. Given that goal and given that the motion and the saving clause remedies are each encompassed section 2255, the saving clause requirements really should parallel those of section 2255H2, which requires reliance on the new Supreme Court rule of constitutional law that is a rule not dictated by precedent. Applying a different standard here would really lead to an absurd conclusion that Mathis is somehow not new for the purposes of section 2255, but it's potentially new for the purpose of a Davenport petition, so long as the petitioner's claim would have been previously foreclosed by binding precedent, which two requirements seem to have been somewhat conflated in Chazin. So, as we said, in Chazin, the court determined that Mathis announced a new rule because it injected clarity and direction into law under the ACCA and abrogated a circuit precedent. But then you can look at a similarly timed case, Hanson, which holds that Mathis did not announce a new rule for purposes of the limitations period of 2255F3 because Supreme Court precedents made Mathis a straightforward case. And these views really can't be reconciled. The rule announced in Mathis should either be new or not new, and the newness of the Supreme Court decision shouldn't depend on the procedural mechanism a prisoner is using, but on whether the decision was dictated by more than 25 years of precedent, dating back to the Supreme Court's decision in Taylor. The intent in 2241 is not to provide a superior remedy to the motion remedy under 2255, and to conclude that Mathis is new for the purposes of the 2241 petition, but not new in the 2255 context, does exactly that. And we believe that result does not make sense in light of congressional intent and in light of how these statutes are designed to function for litigants. We would also argue, as I discussed earlier, that Chazin doesn't foreclose the newness argument when it's considered in the context of Borman. Finally, I'd like to talk also briefly that Mr. Lozcano should not be able to obtain relief here based on a circuit-level decision. This court should clarify that a Davenport petition must be based on Supreme Court decisions of statutory interpretation, and that's for some of the same reasons I've just discussed in the newness requirement. The structural problem that Supreme Court decisions that announce a new retroactive rule of constitutional law. As the concurrence in Chazin stated, it is an odd state of affairs if one of prisoners with a second or successive statutory claim can secure relief based on a circuit-level decision, while a prisoner with a second or successive constitutional claim can secure relief only if the Supreme Court acts. And in this case, Mr. Lozcano's petition doesn't only rely on Mathis, it also relies on a circuit-level decision of United States v. Elder, which we've spoken about earlier, where this court held that the federal definition of felony drug offense required courts to apply a categorical approach. The Elder holding is a condition precedent to any Mathis-style challenge to a felony drug offense, and Elder wasn't dictated by Mathis. For instance, if this has had to first succeed in convincing this court that the categorical approach applies, Mathis, which examined the Armed Career Criminal Act, doesn't have any bearing on that question, and the only relevance Mathis has to a statute is in the first instance if the categorical approach even applies. Instead, the decision in Elder was dictated by the text of Section 80244 and Historical Justifications for Applying a Categorical Approach in Recidivist Sentencing, Practical Difficulties, Unfairness, and Sixth Amendment Concerns, all of which are found in Supreme Court precedents that predated Mr. Lozcano's direct appeal in Section 2255 motion. We understand that the case in concurrence did state that this court recently permitted a petitioner to obtain relief based on a circuit-level decision and referenced Steven v. Marski. But in that case, the court was accepting the government's waiver in that appeal, and we don't think that should be considered a holding that a Davenport petitioner can now base his claim on a circuit-level decision of statutory interpretation. With that exception in Beeson, the precedential decisions where the court restated the saving clause test without explicitly stating that a Davenport petition must be based on a Supreme Court decision all involved petitioners who relied on Supreme Court precedents. So we believe that in the case law, when there is a failure to state specifically that a Supreme Court precedent is required, that's usually at most dictum or otherwise it could just be a shorthand repetition of the test when you look at the actual facts of the cases and the cases that are being relied on. So in sum, given his reliance on Elder, we believe Mr. Lozcano should not be able to obtain relief. Your Honors, if you have no further questions, we'll wrap up the argument in our brief and ask that you affirm. Thank you very much, Ms. Boyle. Anything further, Mr. Smith? Yes, Judge. Let me first pick up this argument that Mr. Lozcano is relying on circuit-level precedent. Here is what NAFIS-directed sentencing courts could do. The first task for a sentencing court faced with an alternatively phrased statute is to determine whether its listed items are elements or means. If they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution. That's exactly the rule that Mr. Lozcano's claim rests on. His 2255 petition, as we point out in our brief, was filed before Elder was decided. Elder, Najira Rodriguez, those cases were decided based on NAFIS, unmediated. That's the result that NAFIS compelled. There's something a little ironic about the government claiming that NAFIS did not dictate the results in Elder and Najira Rodriguez, and yet NAFIS was dictated by precedent. The opposite is actually the case. All you need to know about that is to read the government's own brief to the Supreme Court in NAFIS. Again, going back to this issue of whether Mr. Lozcano's claim was foreclosed, it absolutely was because his claim turns on divisibility and whether the modified categorical approach applies. This court was very clear its case law pre-NAFIS and post-NAFIS are mirror images of each other. What Sperberg argued was that only by examining the charging documents could the federal court know which kind of threat had been entailed in his underlying state conviction. You have one minute remaining. Thank you, Your Honor. When Sperberg insisted that the courts must stop with the statutory definition, what he was saying was that that statute's not divisible and the modified categorical approach does not apply. The court rejected that. That was its holding, and that's what the court applied. It's true in a sense that the Seventh wasn't listed with the other courts that had lined up on various sides of the circuit split in NAFIS, but I don't think anyone purported to provide an exhaustive list. I think part of the reason the Seventh Circuit didn't get highlighted there is there were some courts that, depending on how they read DeCamps, revised their previous divisibility jurisprudence. The Seventh Circuit remained consistent both before and after DeCamp in a way that was completely foreclosing of a NAFIS-type claim. Thank you, Judge Easterbrook. The case was taken under advisement.